23-1044 John Doe v. Securities and Exchange Commission Mr. Cummings for the petitioner, Mr. Shirey for the respondent. All right, Mr. Cummings, good morning. Good morning, Your Honor. May it please the Court, Tom Cummings on behalf of the claimant. This is an appeal of the Security and Exchange Commission's denial of claimant's whistleblower award application. The case comes down to a simple set of facts and turns on a single question. First, the fact. Counsel, can you get closer to the microphone? I have a hard time hearing. I'm trying to do everything. Yes, Your Honor. Is this better? Well, if you'll just get closer to the… Okay. Is that better? Thank you. Of course. So, as I was saying, this case comes down to a simple set of facts and a single question. The facts. Two co-venturers are working on a business project. One is the claimant's client. The other is stealing from the project. Claimant reports the thief. Pausing here. It's undisputed that claimant's tip led directly to the Commission's investigation, which stopped a massive fraud and recovered tens of millions of dollars for the federal government. In short, it's undisputed that claimant did the right thing substantively. So the only question is, did claimant reasonably believe that reporting this thief could serve his client's interests? He did, and the Commission abused its discretion, including otherwise. So… Yes, Your Honor. It seems that there's… This case turns on sort of factual determinations by the Commission, and it seems that there is evidence in the record that your client believed that his client would be a perpetrator and not a victim of this fraud, which would preclude the idea that him blowing the whistle on his client was in his client's interest. Respectfully, Your Honor, there's no contemporaneous evidence that he believed that his client was involved. In fact, all of the contemporaneous evidence directly contradicts that. So can I point you to a few parts of the record and ask you to address them? So didn't he say, while I did not yet have smoking gun proof of the misconduct by my client at the time I made the whistleblower submission, I had suspicions that the interests of investors were not being adequately protected? He also said, I considered that the tip would lead to an SEC investigation of the entire money trail. I would uncover any wrongdoing by my client. And the purpose of my tip was to alert the SEC to investigate the entire offering, including all affiliated persons and entities, including not only the third party, but also my client. So if he believed that his client was a perpetrator, it could not have been in his client's best interest to blow the whistle. So a couple of things there, Your Honor. First, he made that statement in 2022, which was eight years after he had made this initial tip. But it's supported by that substantial evidence in the record that supports the commission's finding. So it's contradicted by the actual four corners of his tip. It's contradict which state that he's seeking to have the project successfully completed. If he wanted the project to be successfully completed and he knew that one co-venture was stealing from the project, he suspected that another would make no sense to report it to the project. That's arguable. But if it's supported by evidence in the record, we affirm. Correct. Yes, Your Honor. But it's also contradicted by the declaration of the commission's own attorney. He said that they thoroughly investigated the claimant and concluded that he neither knew nor should have known of the wrongdoing by his client because he didn't have access to that information. And. Even if so, it's the first part. And the second part is if he actually believed that his client was involved and it would have been permissible under Rule 4.1. But we're not asserting that he reasonably believed that his client was involved when he made the tip in 2014. Rather, he reasonably believed, as his own whistleblower submission states, that he was serving his client's interest, that he wanted the project to be successful. Now, in 2015, he did learn that his client was involved and he resigned. And then he sat for multiple interviews with the commission, as well as other law enforcement agencies. And his cooperation enabled the commission's successful process. I understand that. But I think the question in this appeal is whether it was in his client's interest to to blow the whistle. Right. Whether the commission found it was not and there's substantial evidence supporting it. So even if you have arguments to the contrary, we're not sitting de novo and weighing these arguments. We're just making sure that the commission. That their findings were supported, it seems to be. Yes, Your Honor. And the only evidence is eight years afterwards and is contradicted by the contemporaneous evidence. But that evidence is in the record. And to the extent that it indicates that he reasonably believed that his client was committing a crime, it would be permitted under Rule 4.1-6, Subsection B, which permits a lawyer to make a disclosure of confidential information to prevent a client from committing a crime. But that's not you didn't make that argument in your brief. That's right, Your Honor, because we believe that the record read as a whole unequivocally demonstrates that when he made the submission in 2014, he thought he was acting in his client's interest. But his client didn't have an interest in the ultimate project as far as a financial interest. It wasn't a shareholder, right? That's right. But his client wasn't like a partner in the partnership that owned the project, right? His client was the corporation. But that corporation was not a partner in the partnership that was constructing the items at issue, right? That's correct. So how is it in his client's interests to disclose this just because his client could get more work in the future or something? But I don't understand the argument. So both benefits and detriments. The benefits would be it would receive revenue and profits from the successful completion of the project. And then the detriments, by fulfilling its contractual obligations, it would avoid liabilities to contract counterparties and investors. And then, of course, the knock-on effects, the successful completion of this project would allow its business to win future business. And you don't dispute that what he disclosed were client confidences within the meaning of work product, attorney-client privilege? I would dispute that it's neither attorney-client privilege nor work product. He was very careful not to disclose any attorney-client material. In fact, the only material that he disclosed was information that he obtained within the course of his representation about the person that he believed was stealing. I spoke too loosely there. You don't dispute that it's confidential information that he disclosed that was learned and gained in the course of his representation of his client? We agree that within the broadest reading of confidential information, it was technically confidential information, although it's important to point out that it was not his client's confidential information. Further reinforcing that his disclosure both fulfilled the spirit and the letter of the relevant attorney conduct rule. What difference does it make for the purpose of the rule, whether it's his client's confidential information or not? I didn't think that the rule made any such distinction. Your Honor, I think that these are rules of reason being applied with thought to the broader context. You can't disclose attorney-client information without your client's express consent. You can disclose confidential information even without your client's express consent to the extent that you reasonably believe that it would serve your client's interest. Here, this is potentially one step further. This is not confidential information of the client, but merely confidential information that you learned in the course of your representation of the client. For that reason, that it was confidential information learned in the course of representing his client, one of the Commission's alternative arguments falls flat. The Commission argues that the disclosure was not authorized because it was not within the scope of his representation. The scope of his representation was providing legal advice on the project in question, working with the investors on the project in question. But all of those were directed towards a single aim, the ultimate success of the project. And as his TCR, his whistleblower submission, expressly states, he's making the submission that the project can be successfully completed. There are no questions, but I would like you, do you have your blue brief? Yes, Your Honor. Could you turn to page 18? And while Mr. Shirey is arguing, on that page, the quoted language, that paragraph on the fourth line, you have added something that describes the regional centers. That is, entities such as claimant's client. And what I'd like you to do before you reply is tell me how this regional economic development authority fits within the definition of regional centers under the statute. Or maybe you can do it standing there. But I think that's an unfair characterization of it. Your Honor, I'd be happy to supply supplemental briefing on that point in a week of this argument. I would be happy to provide you a supplemental brief on that argument. I wouldn't want to speak off the cuff and misrepresent it. All right. But you know the entity that your client worked for. Yes, Your Honor. I'd like to know how it fits within the definition of regional centers. You have added to that by saying entities such as the claimant's client. My understanding is that my client was a regional center under the relevant federal program that authorized investors to qualify for immigration status if they made sufficient investments. And you can't look at your file and find that site? Not as I stand here. All right. Okay. Thank you. Mr. Shirey. Is that as far as it goes? It may go a little further. Great. There we go. I think we're at the end. Good morning, Your Honors. William Shirey for the Security Exchange Commission. The commission, when it's designed its whistleblower program, was very careful to not greenlight attorneys taking their clients' information and using that information for their own benefit, the benefit of the attorney. So the commission created a regime that's based on preserving and promoting the duty of confidentiality. And as part of that regime, the commission's rules place the onus on attorneys who want to use their client's information to explain how the disclosure fits within the limited exceptions that exist throughout this country to breach or to use information that would otherwise potentially violate the duty of confidentiality. Can I ask you something? We couldn't find another case in which an attorney, based on what his client did or didn't do, was awarded a whistleblower award. Do you know of any? I am not aware of one, Your Honor. It is for the understandable reason, because an attorney taking their client's information and using it is so discouraged and subject to, as we discussed in footnote 21 of our orders, so subject to very limited exceptions. Returning to the point I was just sort of addressing. Isn't it the case that even if it's not under the whistleblower awards, attorneys make disclosures to the SEC, Justice Department, on behalf of corporate clients all the time? If there's a Foreign Corrupt Practices Act violation, et cetera, that, you know, at some point the attorneys decide that it's in their client's interest to disclose that, even though it will subject their company to scrutiny, investigation, maybe even prosecution, because it's in the government, encourages those disclosures, and the company then, you know, throws the guilty employees under the bus and tries to, you know, have some sort of remedial measures, et cetera, and better prophylactic measures. So it's not unprecedented for lawyers to disclose kind of inculpatory confidential information to the government, right? That's absolutely correct, Your Honor. But in those contexts, the attorneys are coming forward in their sort of fiduciary capacity and the representative capacity speaking for their client. And they're not making money from it. We have not had a situation like that today, no. And they're also in the run of cases, doing it with the express authorization with their client, where they've engaged with their client, they've informed the client about the potential risk, the upside and the downsides of coming forward and admitting that there's been a violation of the securities laws and working to remediate that. My point isn't that the cases are similar. My point is that sometimes disclosure of client confidences to enforcement authorities does serve the client's interests, right, which is the whole point of this Florida Bar Rule 4-1.6C1, right? Typically in cases that you're describing, Your Honor, it would be actually with express authorization to come here. There had been no dialogue with the client that has ever been alleged, and the attorney took it upon himself, sort of essentially going rogue, to decide it's in my client's interest. And on that point, unlike what you're describing, Your Honor, which is a situation where the attorney comes forward to ultimately protect the interest of the client, the overall interest of the client, you actually go back and you look at pages 76, I believe they're pages 76 and 77 of the Joint Appendix. That's the declaration that was submitted, the sworn declaration that was submitted by DOE. DOE nowhere alleged, nor in any papers that he submitted to the commission, that he was doing it to protect an innocent client or in any way that there had been any discussion with the client about the consequences, the downside risk of coming forward that you would normally expect in that sort of fiduciary relationship of providing the client advice and working through what is the best next step. But what I'm trying to, I guess, clarify here, and I think we have to distinguish, is a human being hired the claimant to be a lawyer. That human being was a manager of an LLC, but the LLC was the client, right? The company, the entity was the client. The person who was paying the bills and who had hired him was kind of the client because they hired him, but ultimately the company wasn't the client, not that individual. And if that one individual is corrupt, what conversation can the lawyer have with that corrupt individual about what the company's best interests are? How is that conversation supposed to go? Your Honor, that is a consequence of the duty of confidentiality. If there is no one to talk to, the attorney's principal responsibility is not to sort of in that fiduciary capacity decide, notwithstanding the fact that the only representative official at the company, the only person who can speak for the company in any kind of authoritative capacity can't actually authorize it. It's not consistent with the attorney-client relationship for the attorney then to decide, nonetheless, he or she is going to come forward to the commission. Suppose the entity is a charity and it's raised millions of dollars to hurricane victims, and it's controlled by one person who hires a lawyer to represent it. And that lawyer learns that that person who controls the charity is stealing all of the money. But the charity is the client of the lawyer. So it wouldn't be in the client's interests for that lawyer to disclose that all the money is being stolen without kind of like consulting with this corrupt individual first. That would be a violation that would be inconsistent with the interests of the client. So, Your Honor, a couple of things. I think that the clearest answer to that actually is that the interest of the client, and this is discussed in the comment to the Florida Rules, is the interest of the client turns on the question of whether the disclosure is necessary, and now I'm quoting from the comment to the Florida Rules, in carrying out the representation, carrying out the work that the attorney is hired to do. So there may be instances that you're talking about, Your Honor, where a general counsel may make a determination under the particular facts and circumstances, under the particular applicable rule, that it is in the client's interest. But what we have here, Your Honor, is an attorney who was principally, according to his own declaration submitted in September of 2021, he was principally an immigration attorney. He was then hired to, or he was then asked to assist with certain preparation of offering materials. That is a far cry from someone who you're talking about, Your Honor, who might be a compliance official, who might be a general counsel, who has to make decisions based on the applicable rules under the particular facts and circumstances, whether it makes sense to do it. That is not the case we have, and for obvious reasons, the Commission's not in the best situation to opine about the application of the various rules in those more complicated situations that might come closer to the heartland of what an interest of the client is. That's not what we have here. Clients, attorneys are fiduciary. They work to do the work that they're hired to do. The best interest of the client exception is an implied authorization, as the rule says, to make necessary disclosures, disclosures that the attorney believes are reasonably necessary. Reasonably necessary is an objective standard under the Florida rules. Whether an attorney, a prudent attorney, is what the Florida rules say, the terminology, the definition of reasonably, whether a reasonable attorney would believe that coming forward to report misappropriation that their own client may be engaged in, and to have that client investigated and potentially subject to an enforcement action, is not what particular Florida rules. But I guess that's why this is like a little, it's a little bit like the SEC is kind of trying to have it both ways a little bit, because the client of the claimant was not the person who was doing the misappropriation, right? The claimant did not represent the individual, right? Correct. So when the claimant blows the whistle, the claimant isn't blowing the whistle on his client, right? Because his client is the entity. His client is not the individual person who is doing the misappropriation, right? That is not, Your Honor, according to the declaration that's at page 76 and 77 of the joint appendix. And I'm happy to read to you from it, being sensitive to the fact that we're Pardon me. Pitch is 84 through 85. DOE actually says that the purpose and the disclosure in my whistleblower submission was to What paragraph are you on? I'm on paragraph one, but paragraph two, and there's a number of paragraphs that carry through with the same concept, which is the purpose of the disclosure. And my whistleblower submission was to prevent a crime being committed, exerting out than my client. That is not someone who's stepping forward to protect their client from someone who's having a co-venture, who is stealing from the asset or stealing from the investor funds. If I may have just 20 seconds, ultimately, the way that the commission's rules work, an attorney has to demonstrate that they fall within one of the narrow exceptions. The burden is on them. Here, the commission determined that notwithstanding the potential circumstances that might exist in some cases, that here the client or the DOE did not explain, not grapple with, how subjecting his client to an investigation, which he says was his goal, to subjecting his client to a potential enforcement action, which he said was also something that was in his, that he was, that promoted him coming forward or led him to come forward, how those fit within the totality of the overall circumstances, so that it was in his client's interest. And in failing to do that, failing to carry that burden, failing to make that factual showing, the commission made a determination that this court should, an actual determination that we believe this commission at this court should have followed. I've got a couple questions. That took me a while to get pages 76 and 77. What are you specifically pointing to there? I'm sorry, Your Honor. I was specifically, and I had the wrong pages, pages 84 through 85 is what I was specifically referring to. That was the declaration from January 2002. But actually, Your Honor, page 76 is a great example as well. And since you're there, page 76 on the carryover sentences at the end, just backing up for a second, there had been a preliminary determination here where the commission determined that the crime fraud kind of exception didn't apply. The response that's on page 76 to 77 is actually Joe stating that the commission had misunderstood his TCR. He states, I was actually, and I'm going to try to read it carefully. He says, the commission implies that my purpose in the disclosure was only to prevent the co-venture, who was not my client, from performing this misappropriation. In fact, my goal was not solely to prevent the co-venture from committing a crime, but also to prevent my client from committing a crime. That is him, that is Doe, correcting a perceived misinterpretation of the facts from the TCR, from the original tip that he made, where he believed that the commission had only understood the tip to involve reporting the wrongdoing of the co-venture. He's actually saying here, I'm outing my client based on suspicions and concerns that I have about my client's misconduct. Okay, and then can you turn to your order, which is at 89 to page 96? And you may have touched on this already, but it may be waived. But my question goes to the sentence at the bottom of 8. Page 8, are you of the order? I'm in the order, yes, Your Honor. Okay, that sentence, while the Florida rule permits limited disclosure of client confidential information, when a lawyer reasonably believes disclosure is necessary to prevent the client from committing a future, okay, we know that, but then the result for ongoing crime. Now, why did you conclude that this wasn't an ongoing crime? Wouldn't it be reasonable? And again, it may be waived. I'm just trying to figure out how you analyze these for another case. If someone reports a crime that's already been committed, what do you use to determine that it isn't ongoing or it is ongoing? Wouldn't it be reasonable for a whistleblower to say, my client committed this crime without saying, and he is continuing to commit this crime? So, Your Honor, I think it comes back to the Florida rules and the narrowness of the overarching duty of confidentiality that permeates the entire attorney-client relationship. It's an important part of the foundation of that relationship. And so the Florida rules put the onus on the attorney to make sure that they fit within this very narrow exception. What Your Honor is talking about actually sort of would go exactly against what Florida has directed. An attorney has to have a reasonable belief that there is something ongoing. So that's the critical answer, I think, and it's talked about on page 21. I don't think that opposing counsel, excuse me, footnote 21 of that order talks about how narrow the exceptions are in that department. And Florida is very harsh. I mean, that first quarter bar versus Knowles, the client's statement that she would lie in court did not establish a sufficient basis. And if Your Honor, if I can just for a second, that there's a when the commission promulgated the rules, they were very conscious that the aggressive enforcement of the duty of confidentiality is actually consistent with the goals of whistleblower program. The ultimate goals of the whistleblower program are to promote the effective enforcement of the securities laws, compliance with the securities laws. The cornerstone of the underlying logic of the duty of confidentiality. So the clients talk to their talk to their counsel. They give the information that they may be engaged in inappropriate contact. They ask, what should we do? This has been discovered. This has been going on and they get counsel from their attorneys. I guess that. But the ABA model rule one point six does not include this exception. See one that's in the Florida rule. The ABA model rule. And it goes through all of the instances where a lawyer may reveal confidential information. Didn't include what's in C1. And from my reading on that, the ABA, whatever committee recommended language akin to C1. But a lot of lawyers objected to that and said, you know, that's a pretty broad exception to allow a disclosure that a lawyer reasonably believes is consistent with the interest of their client. And so the ABA took it out of the model rule. But Florida, for whatever reason, put it in their state. So a lot of the opinions in court, you know, both ethical opinions and and and bar opinions and court opinions to talk about rule one point six confidentiality. Are based on state rules that are modeled on the ABA model rule completely and don't have this provision C1 in it. So in that sense, Florida is broader than most jurisdictions because it has this exception. Did the commission grapple with that? So that argument was not raised at any point during the briefing. But I think the the core point is, Your Honor, that even under existing Florida precedent, even under the commentary to the Florida rule, it has to be. It's it's I can try to find. Are we going to supplemental if the court wants? Actually, I think it's cited in our brief. It has to be a representation necessary in carrying out. It has to be a disclosure necessary in carrying out the representation. So whatever the disconnect may be between the ABA model rule or rules. It's undisputed that there was nothing about I would argue it's undisputed about counsel's role as a senior immigration. I don't want to disclose the full title, but it was an immigration attorney at the client who participated in assisting periodically with offering materials. There's nothing about that empowered this individual to be an oversight compliance official who might somehow have it have it such that it was necessary in the course of his representation. Necessary. That's the word in the rule or to disclose this information to. May I answer one? And I know I've gone on to launch Japan. One thing my opposing counsel said, he mentioned that the staff attorney at the SEC declaration stated that. That declaration, there had been no evidence found that attorney knew of the clients wrongdoing. That's not entirely accurate. What the declaration says, and this is on page 62 of the joint paragraph 13 is that the commission found that the claimant did not know. And I'm paraphrasing that the misstatement representations that were put into. His assistance into the offering documents were. We're wrong or misrepresentations and. What the clients with the attorney here subsequently learned. Is as time goes on, is that there had been misappropriation by various parties here. So I just wanted to clarify that it's a narrower than the representation and it will speak for itself. Thank you, Jim. All right. Thank you. Mr. Cummins, why don't you take two minutes? Thank you. Microphone. Returning to that last point that what my client subsequently learned what the claimant subsequently learned was that his. Clients principle was involved. So, you're correct that there's no evidence in the record that he reported it to his client because his client wasn't the individual was the company. But if I direct you to page 92 of the joint appendix, this is from the final order. Claimant brought his concerns to the employer's manager before reporting to the, but did not feel that his actions effectively address the situation. Dropping down to the footnote, according to the claimant, the employer did not have a compliance department or compliance officer for claimant to report his concerns to. And claimant did not believe that further reporting to the employer's manager would be useful in preventing harm. To investors, claimant resigned from the employer due to increasing concerns about the employer's manager about a year after submitting the tip. Again, and he made the tip. He did not know that his client was involved. And his client was not the individual, but the company. He learned about the company's involvement. He resigned and he continued to participate in the investigation. When he made the 2014, he would have qualified indisputably for the. Why did he say that he was reporting a crime by his client? Repeatedly later on. Your honor, I. I don't know, but I believe that hindsight and the 8 years participating in this investigation. They have changed his view of the world, but from the 4 corners of the. When he made it, he said he wanted the project to be successful. Does is there precedent that says that the is only allowed to consider the 4 corners of the. You can't consider statements that are made afterwards. No, your honor. Unless there are any other questions, we respectfully ask that reverse the commission's decision for an award. Thank you.
judges: Henderson, Wilkins, Pan